IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KATHLEEN M. KISLICKA,**　　　　　　　　　　　6:17-cv-00020-BR

　　　　**Plaintiff,**　　　　　　　　　　　　　　　OPINION AND ORDER

**v.**

**Commissioner, Social Security
Administration,**

　　　　**Defendant.**


**RICHARD F. MCGINTY**
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309
(503) 371-9636

　　　　Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, WA 98104
(206) 615-3858

    Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Kathleen M. Kislicka seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on November 9, 2012, alleging a disability onset date of February 22, 2011. Tr. 171.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on June 16, 2015. Tr. 41-81. Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified.

---

[1] Citations to the official transcript of record filed by the Commissioner on July 25, 2017, are referred to as "Tr."

2 - OPINION AND ORDER

The ALJ issued a decision on July 28, 2015, in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 15-40. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on November 18, 2016, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on January 2, 1961, and was 54 years old at the time of the hearing. Tr. 171. Plaintiff has a GED. Tr. 46. Plaintiff has past relevant work experience as a motel cleaner, office helper, and laundry worker. Tr. 74.

Plaintiff alleges disability due to arthritis, bursitis, bulging discs, and hernia. Tr. 82.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 28-33.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her

3 - OPINION AND ORDER

inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R.

5 - OPINION AND ORDER

§ 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her February 22, 2011, alleged onset date. Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar degenerative disc disease with facet arthropathy; right-knee prepatellar bursitis/mild osteoarthritis; left-knee mild osteoarthritis; and arthralgias in her shoulder, ankle, hand, and finger. Tr. 20. The ALJ found Plaintiff's conditions of hernia, acid reflux, and depression are nonsevere.

7 - OPINION AND ORDER

Tr. 21.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations: lifting ten pounds frequently and 20 pounds occasionally; standing and walking for six hours in an eight-hour work day; sitting for four hours in an eight-hour work day; occasionally climbing ramps and stairs, stooping, kneeling, crouching, balancing, pushing or pulling, and reaching overhead; frequently handling and fingering; and never climbing ladders, ropes, or scaffolds.  Tr. 23.

At Step Four the ALJ found Plaintiff is able to perform her past relevant work as an office helper.  Tr. 33.

At Step Five the ALJ made an alternative finding that Plaintiff could perform jobs that exist in significant numbers in the national economy.  Tr. 34.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly rejected Plaintiff's testimony in part; (2) improperly gave only "some weight" to the opinion of treating physician Ian Loewen-Thomas, M.D.; (3) improperly failed to include all of Plaintiff's

limitations in Plaintiff's RFC; and (4) improperly failed to resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles*.[2]

**I. The ALJ did not err when she partially rejected Plaintiff's testimony**.

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th

---

[2] U.S. Dep't of Labor, *Dictionary of Occupational Titles* 207 (4th ed. 1991)(DOL-DOT)

9 - OPINION AND ORDER

Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she is unable to work more than eight hours per week because she has "bones grinding . . . all over [her] body." Tr. 55. Plaintiff testified she had not obtained any relief from the pain-management treatments she had received from her alleged onset date through the date of the hearing. Tr. 54-55. Plaintiff stated she can sit for ten-to-fifteen minutes before she needs to change position because of pain in her back and hip, she can stand for ten-to-fifteen minutes and then she has to "shift around" due to pain, and she can walk for ten-to-fifteen minutes before she has to stop. Tr. 56-57. Plaintiff testified she has been similarly limited since February 2011 and has "never gotten any better than that." Tr. 57. Plaintiff also noted she has pain in her knees, back, shoulders, and hands at a level between two and four out of ten when she is "doing nothing." Tr. 58. When Plaintiff works her four-hour shift, her pain level is "usually at least a five." Tr. 68. Plaintiff stated she has arthritis and bursitis in her hands, which causes her to experience cramping and "nerve pinches" that can last up to 20 minutes. Tr. 58. Plaintiff stated she can no longer "ring [*sic*] out rags or sponges very

10 - OPINION AND ORDER

well because of her hand pain." Tr. 70. Plaintiff received injections which "helped a little bit, but not a whole lot" with the pain in her back. Tr. 61. Plaintiff noted she takes five-minute breaks to sit down approximately every twenty minutes when she is working. Tr. 64. Plaintiff stated she is not taking any prescription pain medication and relies on over-the-counter medications like ibuprofen or Tylenol, which provide her with "barely" any relief from pain. Tr. 66. Plaintiff stated her medications "give [her] minor dizzy spots" so she does not like to drive longer than 20 minutes. Tr. 48.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely credible." Tr. 27. The ALJ noted Plaintiff underwent an MRI of her spine in 2011 that showed mild left facet degeneration at L1-L2; a mild circumferential disc bulge with minimal face degenerative change at L2-L3; and mild diffuse disc bulging and mild facet degeneration at L3-L4, L4-L5, and L5-S1. Tr. 392. Plaintiff's physical therapist reported in June 2011 that Plaintiff was able "to ambulate all required distances with symptoms," "to sit for up to 30 minutes without symptoms," and "to stand for an unlimited time with extra symptoms." Tr. 260. On June 17, 2011, Plaintiff's treating physician, Steve Truong,

11 - OPINION AND ORDER

M.D., noted Plaintiff's MRI showed "mild multilevel lumbar spondylosis [and] . . . mild foraminal narrowing."  Tr. 314.  Dr. Truong assessed Plaintiff with lumbar strain and noted she had "some underlying lumbar spondylosis although not significantly beyond what [he] would expect of someone her age."  Tr. 316.  Dr. Truong recommended physical therapy and stretching.

The ALJ also noted Plaintiff sought minimal medical treatment for any condition in 2012 even though she had full health insurance, which indicates her symptoms were not as severe as she described.

The ALJ noted Plaintiff underwent MRIs of her knees and hands in January 2013, which reflected mild narrowing of medial compartments bilaterally and "no other arthropathic changes."  Tr. 321-22.  On February 28, 2013, Dr. Loewen-Thomas reported Plaintiff's MRI showed mild degenerative changes in her spine and no significant abnormalities in her hands and knees.  Tr. 360.  Plaintiff reported to Dr. Loewen-Thomas that she did not have any side effects from her medication.  Tr. 360.  In July 2013 Plaintiff was seen by examining physician Robert Zirschky, M.D., for an evaluation of her musculoskeletal complaints.  Dr. Zirschky noted Plaintiff underwent x-rays of her lumbar spine, hips, and knees, which did not show any "major arthritic change of the knees and hips other than what would be expected for [Plaintiff's] age."  Tr. 421.  Dr. Zirschy stated Plaintiff

had spondylar arthropathy of her back and myofascial pain of a chronic nature." Tr. 360. He noted he did not "see any mechanical orthopedic correctable problems" and recommended over-the-counter anti-inflammatories and/or analgesics. Tr. 422.

Plaintiff had a number of transforaminal epidural steroid injections from September through November 2013. In September 2013 Plaintiff "reported at least 50% pain relief after the procedure" and was "satisfied with the level of pain relief." Tr. 466. In October 2013 Plaintiff reported at her follow-up visit that her pain decreased by fifty percent, "particularly at the lower back." Tr. 450. In November 2013 Plaintiff reported she was walking for exercise, that her medications were providing pain relief, and that she would "like to address the remaining pain at the lower back and anterior hip." Tr. 450. Accordingly, Plaintiff underwent transforaminal epidural steroid injections in December 2013. In January 2014 Plaintiff reported she had received four-percent pain relief in her lower back from the injections and that her medications also provided pain relief. Tr. 441.

On February 26, 2014, Plaintiff reported to Dr. Truong that her lower-back pain was at a three out of ten. Tr. 556. On April 4, 2014, Plaintiff rated her pain at two out of ten, reported she was "feeling better," noted her daily activities were "becoming more comfortable," and reported she could rest on

13 - OPINION AND ORDER

her side for short periods.  Tr. 562.  On April 24, 2014, Plaintiff reported to Dr. Truong that "her symptoms are significantly improved," her back pain was a two out of ten, she was not taking "any routine medications for the pain," and "therapy was helpful."  Tr. 599.  On June 5, 2014, Plaintiff reported to Dr. Truong that she had been "doing fairly well," she was "maintaining her level of function," and her chronic pain was a two out of ten "although overall manageable."  Tr. 596.  On July 15, 2014, Plaintiff reported she had received "at least 80% pain relief" since receiving "SIJ . . . and piriformis injunctions" on February 26, 2014.  Tr. 591.  Plaintiff stated she was satisfied with the level of pain relief.  On August 26, 2014, Plaintiff reported she continued to have an eighty-percent decrease in lower-back pain.  Tr. 605. Treating Physician's Assistant Don Winder, PA-C, noted Plaintiff had made "excellent progress."  Tr. 606.  On September 23, 2014, Plaintiff reported her medications were working well and she was not experiencing any side effects from her medication.  Tr. 603.

In her opinion the ALJ noted the medical evidence did not support Plaintiff's testimony that she did not receive any relief from various treatments or pain medication, her assertion that she suffered side effects from her medication, or her testimony that she suffered "grinding bones" all over her body.  The ALJ also concluded Plaintiff's activities did not support her

14 - OPINION AND ORDER

asserted level of limitations.  For example, the ALJ noted
Plaintiff stated on her February 10, 2013, Adult Function Report
that she would fish "monthly 1-8 miles" and "hunt seasonal 4-6
days."  Tr. 217.  Plaintiff also noted she hunted, hiked, fished,
and walked with her ex-husband.  Tr. 217.

The Court concludes on this record that the ALJ did not err
when she partially rejected Plaintiff's testimony because she
provided clear and convincing reasons supported by substantial
evidence in the record for doing so.

**II. The ALJ did not err when she gave only "some weight" to the opinion of treating physician Dr. Loewen-Thomas.**

Plaintiff alleges the ALJ erred when she gave only "some
weight" to the opinion of Dr. Loewen-Thomas.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957
(9th Cir. 2002).  When the medical opinion of a treating
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at
957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir.
1996).  "The ALJ need not accept the opinion of any physician,
including a treating physician, if that opinion is brief,

15 - OPINION AND ORDER

conclusory, and inadequately supported by clinical findings."
*Thomas*, 278 F.3d at 957. *See also Weetman v. Sullivan*, 877 F.2d 20, 22-23 (9th Cir. 1989)(An ALJ may reject a treating physician's opinion if it is inconsistent with his treatment notes.); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (2008) ("[I]ncongruity between [a treating physician's] questionnaire responses and [his] medical records" is a legally sufficient reason to reject treating physician's opinion.).

On November 7, 2014, Dr. Loewen-Thomas completed a Functional Assessment of Work-Related Activities check-the-box form in which he noted Plaintiff would need to take 5-10 minute breaks every hour. Tr. 611. Dr. Loewen-Thomas indicated Plaintiff is able to sit for four hours in an eight-hour work day; to stand or walk for four hours in an eight-hour work day; to lift or carry 20 pounds occasionally and ten pounds frequently; to kneel, crouch, and crawl frequently; to push and/or pull, handle, finger, climb ramps or stairs, and stoop occasionally; and to reach in all directions rarely. Tr. 611-13.

The ALJ gave "some weight" to Dr. Loewen-Thomas's opinion. The ALJ noted Dr. Loewen-Thomas did not "explain a physical basis why [Plaintiff] would need additional breaks." Tr. 32. The ALJ also noted Dr. Loewen-Thomas appeared to "place[] too much reliance on [Plaintiff's] subjective reports." Tr. 33. For example, the ALJ noted the record does not support Dr. Loewen-

16 - OPINION AND ORDER

Thomas's limitation on Plaintiff's ability to sit, to stand, or to walk. The record reflects Plaintiff is able to hunt and to fish for longer periods than Dr. Loewen-Thomas's limitations would allow. In addition, Plaintiff's physical therapist reported in June 2011 that Plaintiff was able "to ambulate all required distances with symptoms," "to sit for up to 30 minutes without symptoms," and "to stand for an unlimited time with extra symptoms." Tr. 260. Similarly, in April 2014, as noted, Plaintiff reported "her symptoms are significantly improved," her pain was at two out of ten in her back, she was not taking "any routine medications for the pain," and "therapy was helpful." Tr. 599. On June 5, 2014, Plaintiff reported she had been "doing fairly well," she was "maintaining her level of function," and her chronic pain was a two out of ten "although overall manageable." Tr. 596. On July 15, 2014, Plaintiff reported she had received "at least 80% pain relief" since receiving "SIJ . . . and piriformis injections" on February 26, 2014. Tr. 591. Plaintiff also stated she was satisfied with the level of pain relief. On August 26, 2014, Plaintiff reported she continued to have an eighty-percent decrease in lower-back pain. Tr. 605. PA Winder noted Plaintiff had made "excellent progress." Tr. 606. The ALJ also noted the record reflects Plaintiff consistently had 5/5 strength in her extremities indicating she was not as limited in her handling and fingering as Dr. Loewen-

17 - OPINION AND ORDER

Thomas opined.

The Court concludes on this record that the ALJ did not err when she gave only "some weight" to Dr. Loewen-Thomas's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so

**III. The ALJ did not err when she excluded in her evaluation of Plaintiff's RFC all of the limitations alleged by Plaintiff and assessed by Dr. Loewen-Thomas.**

Plaintiff asserts the ALJ erred when she excluded in her evaluation of Plaintiff's RFC all of the limitations alleged by Plaintiff and assessed by Dr. Loewen-Thomas.

The Court has already concluded the ALJ did not err when she partially rejected Plaintiff's testimony and gave only "some weight" to Dr. Loewen-Thomas's opinion. The Court, therefore, also concludes the ALJ did not err when she did not include in her assessment of Plaintiff's RFC all of the limitations alleged by Plaintiff and assessed by Dr. Loewen-Thomas because she provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV. The ALJ did not err when she did not resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles***

Plaintiff alleges the ALJ erred when she did not resolve an alleged conflict between the VE's testimony and the Dictionary of Occupational Titles.

In her assessment of Plaintiff's RFC he ALJ limited

18 - OPINION AND ORDER

Plaintiff to reaching overhead occasionally. The VE identified the jobs of mail sorter, storage rental clerk, and price marker as jobs in the national economy that an individual with Plaintiff's limitations could perform. Plaintiff asserts those jobs would require more than occasional reaching overhead. The ALJ, however, also asked the VE a separate hypothetical in which the individual was limited to not only occasional reaching overhead, but also to reaching in all directions. The VE then identified three additional jobs in the national economy that Plaintiff could perform. Accordingly, to the extent that there is any conflict between the Dictionary of Occupational Titles and the VE's testimony as to Plaintiff's ability to perform the jobs of mail sorter, storage rental clerk, and price marker, such error is harmless because the VE also identified other jobs in the national economy that an individual who was limited to occasional reaching in all directions could perform.

The Court, therefore, concludes the ALJ did not err when she did not resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles* or, in the alternative, the error is harmless.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 13th day of March, 2018.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge